UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Donna Schraut,

        Plaintiff,

    v.                                       Civil Action No. 2:13-cv-27

Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER
(Docs. 10, 14)

Plaintiff Donna Schraut brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security denying her application for disability insurance benefits.  Pending

before the Court are Schraut's motion to reverse the Commissioner's decision (Doc. 10),

and the Commissioner's motion to affirm the same (Doc. 14).  For the reasons stated

below, the Court DENIES Schraut's motion and GRANTS the Commissioner's motion.

## Background

Schraut was forty-four years old on her alleged disability onset date of

October 25, 2008.  She has a high school education and work experience as a restaurant

supervisor, a cashier/stocker at a fast-food restaurant, a deli worker, a prep cook, a

factory worker, and a daycare assistant.  She was fired from her most recent two jobs for

stealing money from her employer.

Schraut is divorced, and has two grown children and one grandchild.  She lives in an apartment with her boyfriend.  On a typical day, Schraut watches television, talks on the phone, visits friends, plays with her friend's children, works on the computer, cares for her kitten, and works on puzzle books.  She is able to manage her own daily needs, but her boyfriend, who she claims is also disabled, does most of the cooking and household chores.

Schraut is morbidly obese, and suffers from lower back pain, leg pain, and left shoulder pain.  She alleges that, as a result of this pain, she is unable to stand for longer than five minutes at a time, unable to sit for longer than one hour at a time, and unable to lift her arm above shoulder level.  She uses a cane to assist with ambulation, and lies down for approximately two hours each day due to pain.  She also suffers from anxiety and depression; and, to a lesser degree, sleep apnea, acid reflux, and daily headaches. She reports hearing voices, seeing shadows, and not wanting to go out in public.  She alleges that her mind is always wandering, and that she has difficulty maintaining sufficient concentration to complete daily tasks and do activities such as watching television and playing bingo.

In September 2009, Schraut filed applications for social security income and disability insurance benefits.  In her disability application, she alleged that, starting on October 25, 2008, she has been unable to work due to depression, anxiety, inability to walk, difficulty sitting and standing, concentration deficiencies, and sleep problems.  (AR 179.) She stated that she stopped working on May 1, 2009 due to "mood and attitude" problems.  (*Id.*)  Schraut's application was denied initially and upon reconsideration, and

she timely requested an administrative hearing.  The hearing was conducted in July 2011

by Administrative Law Judge (ALJ) Paul Martin.  (AR 39–79.)  Schraut appeared and

testified, and was represented by an attorney.  A vocational expert (VE) also testified at

the hearing.  A few weeks later, the ALJ issued a decision finding that Schraut was not

disabled under the Social Security Act at any time from her alleged disability onset date

through the date of the decision.  (AR 19–32.)  Thereafter, the Appeals Council denied

Schraut's request for review, rendering the ALJ's decision the final decision of the

Commissioner.  (AR 1–3.)  Having exhausted her administrative remedies, Schraut filed

the Complaint in this action.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability

claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step

requires the ALJ to determine whether the claimant is presently engaging in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so

engaged, step two requires the ALJ to determine whether the claimant has a "severe

impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant

has a severe impairment, the third step requires the ALJ to make a determination as to

whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (the Listings).  20 C.F.R. §§ 404.1520(d), 416.920(d).  The

claimant is presumptively disabled if his or her impairment meets or equals a listed

impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Martin first determined that Schraut had not engaged in substantial gainful activity since her alleged onset date of October 25, 2008. (AR 22.) At step two, the ALJ found that Schraut had the following severe impairments: degenerative disc disease with mild stenosis at L4–5, morbid obesity, mild degenerative joint disease in the left shoulder with bursitis/tendonitis, major depression, and anxiety disorder. (*Id.*) The ALJ found that Schraut's obstructive sleep apnea, urinary incontinence, headaches, and hearing/speech deficits were nonsevere. (AR 23.) At step three, the ALJ found that none of Schraut's impairments, alone or in

combination, met or medically equaled a listed impairment.  (AR 23–24.)

Next, the ALJ determined that Schraut had the RFC to perform light work, as

defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Schraut is able] to stand and/or walk for up to 2 hours in an 8-hour
> workday and to sit for up to 6 hours in an 8-hour workday.  She is able to
> climb stairs and ramps on an occasional basis but is unable to climb
> ladders, ropes or scaffolds.  She is able to perform occasional stooping,
> crouching, kneeling and crawling[,] but is unable to perform any overhead
> work activity with her left, non-dominant arm/hand.  She must avoid
> exposure to excessive wetness or humidity.  [Schraut] is able to understand,
> remember and carry out simple one to three step tasks.  She is generally
> able to concentrate and persist on tasks for two[-]hour blocks on a
> consistent basis, however, may experience episodic exacerbations of her
> symptoms of depression and anxiety, which temporarily undermine her
> ability to maintain cognitive efficiency, and result in the need for periodic,
> unscheduled rest breaks of a couple minutes['] duration several times each
> day.  She is able to function in a position which requires only
> passing/casual interaction with the public.  She is able to deal on a routine
> basis with co[]workers and supervisors and is able to deal with routine
> changes at work.

(AR 25–26.)  Given this RFC, the ALJ found that Schraut was unable to perform her past

relevant work as a cashier/stocker, prep cook, daycare assistant, and restaurant

supervisor.  (AR 30.)  Nonetheless, based on testimony from the VE, the ALJ determined

that Schraut could perform other jobs existing in significant numbers in the national

economy, including marker, solderer, assembly machine tender, and final inspector.  (AR

31.)  The ALJ concluded that Schraut had not been under a disability from her alleged

disability onset date through the date of the decision.  (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Schraut argues that the ALJ made the following errors: (1) misstated or omitted relevant facts; (2) gave too much weight to the opinions of non-examining agency psychologists and too little weight to the opinion of Schraut's treating mental health nurse practitioner; (3) failed to properly evaluate Schraut's obesity; and (4) improperly determined that Schraut was not fully credible.  The Commissioner disagrees, asserting that the ALJ's decision complies with the applicable legal standards and is supported by substantial evidence.

## I.      ALJ's Characterization of the Evidence

Schraut argues that the ALJ misstated or improperly omitted certain evidence. First, she claims the ALJ erroneously stated that Schraut's cane was not "medically prescribed."  (AR 27.)  In support of this argument, Schraut points to an emergency room note which states: "[s]uggest use of a cane."  (AR 432.)  This statement by an emergency room physician is hardly the equivalent of a treating physician's prescription of a cane for medical reasons.  In fact, substantial evidence supports the ALJ's statement that "there is no evidence that [a cane] has ever been medically prescribed" for Schraut.  (AR 27.) Although there are medical notes in the record which state that Schraut uses a cane and walks with an antalgic gait (*see, e.g.*, AR 666, 714), several of Schraut's treating medical providers stated that Schraut did not need the cane.  For example, Schraut's treating mental health counselor, Corina Rose, stated that Schraut "use[s] a cane[,] however does not bear any weight on [it] or complain about back [problems] or problems with walking."  (AR 711.)  Likewise, Schraut's treating nurse practitioner, Kathleen Jackman,

stated that Schraut "[a]mbulat[es] with [a] cane but [is] able to walk well without it."
(AR 568.)  Similarly, Schraut's treating physical therapist, Traci Glanz, stated that
Schraut "ambulate[s] with a cane, but does not put weight [on] it at all during session."
(AR 536.)  The evidence suggesting that Schraut did *not* need a cane is more
overwhelming than the evidence suggesting that she needed one.  And where, as here,
there are arguable conflicts in the medical evidence, the Commissioner—not the court—
is charged with resolving them.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).
Moreover, the ALJ's statement that a cane was not medically prescribed for Schraut is
accurate.

Second, Schraut argues that the ALJ was incorrect in stating that Schraut "did not
pursue, and even declined, physical therapy."  (Doc. 10 at 16.)  In fact, the ALJ stated as
follows: "[Schraut] was discharged from physical therapy in early 2010 due to a failure to
appear.  Subsequently compiled records note her lack of interest in pursuing any further
physical therapy."  (AR 27 (citation omitted).)  These statements are factually correct,
and the ALJ accurately cited to the evidence supporting them.  (*Id.* (citing AR 531–46,
629–59).)  Specifically, the record reflects that Schraut was discharged from physical
therapy in January 2010 because she "did not come in for [an] appointment" and was
unreachable by phone.  (AR 634; *see also* AR 657–58.)  She was discharged again in
March 2010 because she was "[n]on-compliant with appointments."  (AR 645; *see also*
AR 642–44.)  Her "lack of interest" in pursuing physical therapy (AR 27) is also clearly
documented in the record.  For example, Schraut's treating psychologist, Dr. Joann Joy,
noted that Schraut "tried physical therapy, but did not find [it] helpful" (AR 542), and

that Schraut "stated no interest in attending a functional restoration program" (AR 544).

Similarly, Schraut's treating physician's assistant, Robert Hemond, stated that Schraut

was "not interested in [physical therapy] and had "no goals" for occupational therapy.

(AR 670.)

Next, Schraut asserts that the ALJ mischaracterized Schraut's testimony regarding

her 2010 work/community service activity.  (Doc. 10 at 17.)  The ALJ stated: "At [the]

hearing, [Schraut] testified that she . . . completed ten days on a work crew, followed by

completing community service stocking books, making jewelry, cleaning, etc., all tasks

that run counter to her allegations of total disability."  (AR 26–27.)  The record supports

this statement.  At the administrative hearing, Schraut testified that she "had to do work

crew for [ten] days, and then . . . had to do community service for another [ten]."  (AR

50.)  She described the community service as "stacking books . . ., making jewelry[,] . . .

[and] cleaning and helping to organize stuff."  (*Id.*)  Other than stating that Schraut

*stocked* instead of *stacked* books, the ALJ's summary of Schraut's testimony is accurate.

The ALJ was not required to recite the details of this activity, including that Schraut

participated in community service for only four hours a day (AR 60) and sat while

making jewelry (AR 50).  *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir.

2012) ("Although required to develop the record fully and fairly, an ALJ is not required

to discuss every piece of evidence submitted.") (quotation marks omitted).  Moreover, it

was proper for the ALJ to consider Schraut's ability to engage in limited

work/community service activity during the alleged disability period, even if that activity

was for less than an eight-hour workday.  *See* 20 C.F.R. § 404.1571 ("Even if the work

you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("[T]he fact that [the claimant] could perform some work cuts against his claim that he was totally disabled."). This is especially true given that there is evidence indicating that Schraut may have been engaging in even full-time work during the alleged disability period. (*See, e.g.*, AR 321 (January 2009 treatment note stating that Schraut was "working full time at Bob's store in Barre.").)

Schraut's remaining arguments regarding the ALJ's purported "distort[ion]" of the evidence (Doc. 10 at 18) fail for the same reasons stated above. As noted, the ALJ is not required to discuss every piece of evidence in his decision, *see Brault*, 683 F.3d at 448; and it is for the Commissioner, not the court, to weigh conflicting evidence in the record, *see Veino*, 312 F.3d at 588. Even where the court might have reached a different conclusion had the matter come before it in the first instance, the court must defer to the Commissioner's resolution of conflicting evidence. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.") (quotation marks omitted). Moreover, the court "may only set aside a determination which is based upon legal error or not supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Here, as discussed in more detail below, substantial evidence supports the ALJ's detailed decision, including his discussion of the medical evidence and Schraut's daily activities.

Particularly noteworthy, Schraut finds fault with the ALJ's statement that "[Schraut] . . . states that she has never had problems with the people she worked with." (AR 28.)  But at the administrative hearing, Schraut did indeed state "No" in response to the ALJ's question: "[D]id you ever have trouble getting along with the people you worked with?"  (AR 60.)  And in a Function Report, Schraut checked off a box stating "No" in response to the question: "Do you have any problems getting along with family, friends, neighbors, or others?."  (AR 223.)  Moreover, examining psychologist, Dr. Gregory Korgeski, stated in his December 2009 Psychological Evaluation that Schraut reported to him that, "despite mood swings, when she worked[,] she was consistently able to . . . maintain at least basically adequate interpersonal relationships with others without conflicts."  (AR 354.)  This is a case where the ALJ's factual findings, such as the finding that Schraut has not had problems with her coworkers, are supported by substantial evidence, although there is also conflicting evidence in the record.

## II.     ALJ's Analysis of the Medical Opinions

Schraut argues that the ALJ erred in his analysis of the medical opinions by affording too much weight to the opinions of non-examining agency psychologists Drs. Ellen Atkins and William Farrell, and not enough weight to the opinion of treating nurse practitioner James Greenleaf.  The Commissioner disagrees.

The Court finds that substantial evidence supports the ALJ's allocation of weight to the treating and non-treating medical source opinions.  Although in many cases it is proper for the ALJ to give reduced weight to the opinions of non-examining agency consultants such as Drs. Atkins and Farrell in comparison to the weight afforded to

examining sources such as Nurse Greenleaf; the regulations clearly permit the opinions of non-examining agency consultants to override those of examining sources, when the former are more consistent with the record evidence than the latter.  *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 567–68 (2d Cir. 1993)); SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  Here, for the reasons explained below, the Court finds that the opinions of agency consultants Drs. Atkins and Farrell are more consistent with the record evidence than the opinion of Nurse Greenleaf.

### A.    Treating Nurse Practitioner Opinion

In a January 2011 Medical Source Statement of Ability to Do Work-Related Activities (Mental) (MSS), Nurse Greenleaf opined that Schraut had "[m]arked" limitations in all mental functional areas, and symptoms such as mood instability and auditory hallucinations that "severely impact[ed] her ability to understand [and] respond appropriately to instructions."  (AR 599.)  The ALJ gave "limited weight" to this opinion on the grounds that it is inconsistent with Nurse Greenleaf's own treatment notes and the record as a whole, including Schraut's daily activities and level of social interaction.  (AR 29.)

ALJs are not required to afford the same level of deference to the opinions of "other sources," including nurse practitioners such as Nurse Greenleaf, as they are to the opinions of "acceptable medical sources," including physicians.  *See* 20 C.F.R. § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  "[W]hile the ALJ is certainly free to consider the opinions of . . . 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not

demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citation omitted). Nonetheless, "other source" opinions are important, and ALJs are required to evaluate them in some depth. SSR 06-03p, 2006 WL 2329939, at *3 ("Opinions from these [other] sources, who are not technically deemed 'acceptable medical sources' under our rules . . . should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). The Social Security Administration directs ALJs to use the same factors for the evaluation of "other source" opinions as are used to evaluate the opinions of "acceptable medical sources." *Id.* at *4. These factors include the length of the treatment relationship, the frequency of evaluation, the degree to which the medical source provided evidentiary support for his or her opinion, and the opinion's consistency with the record as a whole. *Id.*; *see* 20 C.F.R. § 404.1527(c)(2)–(4).

In evaluating Nurse Greenleaf's opinion, the ALJ focused on two of these factors, finding that: (1) the opinion is not supported by Nurse Greenleaf's own treatment notes; and (2) the opinion is inconsistent with the record as a whole. (AR 29.) Substantial evidence supports these findings. Specifically, although some of Nurse Greenleaf's treatment notes indicate that Schraut reported increased symptoms and ineffective medication trials, other treatment notes indicate that Schraut's symptoms improved with medication. For example, in December 2009, Nurse Greenleaf recorded that, although Schraut still had "occasional episodes of irritability and mood swings," she "has noted some improvement in her mood and mood stability." (AR 357.) In November 2010, Nurse Greenleaf stated that Schraut was "sleeping better with the use of Temazepam,"

13

and her mood was good, although she still had episodes of irritability.  (AR 583.)  Nurse

Greenleaf further stated that Schraut "feels the medications are effective and wishes to

continue the current medication at the current doses."  (*Id.*)  In May 2011, Nurse

Greenleaf recorded that, although Schraut felt tired much of the time, her mood was

"improved with the increase in the Sertraline" and she only "rare[ly]" had auditory

hallucinations.  (AR 603.)  Around the same time, Schraut's treating mental health

counselor concurred, stating that Schraut reported that her medications were "working for

her."  (AR 627.)  Also significant, as noted by the ALJ, despite Nurse Greenleaf's

opinion that Schraut was markedly limited in her mental functioning, none of his

treatment notes include or even consider a referral for psychiatric evaluation or

hospitalization.  (AR 29.)

The ALJ also found that Nurse Greenleaf's opinion is inconsistent with the record

as a whole.  Substantial evidence supports this finding.  With respect to medical

evidence, consulting psychologist Terry Padilla found that Schraut had "no cognitive

impairment."  (AR 452.)  Similarly, consulting psychologist Dr. Gregory Korgeski stated

that, although Schraut exhibited "nervous mannerisms" and "spoke at a louder [than

normal] volume," she maintained fairly good eye contact, was pleasant to interact with,

and exhibited no evidence of a thinking disorder.  (AR 362.)  Dr. Korgeski further

observed that Schraut "did not appear to manifest hallucinations or delusions, . . . nor did

she seem to have distorted perceptions of what was going on."  (*Id.*)  He noted that

Schraut was dealing with "a fairly chaotic number of problem situations," which she

seemed "rather preoccupied with."  (*Id.*)  Despite this preoccupation, Dr. Korgeski stated

that when Schraut worked, although she had mood swings, she was consistently able to maintain attendance, concentration, and "basically adequate" interpersonal relationships with others without conflicts"; and was able to complete tasks without significant interference.  (*Id.*)

The non-medical evidence, principally Schraut's daily activities, also demonstrate that Schraut had a higher level of mental functioning than opined by Nurse Greenleaf. Specifically, the record—including Schraut's own self-reporting—demonstrates that, during the alleged disability period, Schraut worked on up to a full-time basis, looked for work, and participated in a vocational rehabilitation program.  (AR 198 ("continues to work at the deli but is hoping to find a full[-]time job"; "interviewed at Capitol Candy"; "continues in an active job search"), 199 ("may consider full[-]time kitchen prep/dishwashing for short[-]term [work]"), 200 ("continues to work at Bob's store in the deli but she is getting between 25-30 hrs per week and that isn't enough[;] [s]he wants full[-]time work[;] [s]he has applied to a number of places but the job market is tight"), 305 ("is going to go to Voc Rehab. [and] is going to try to work at Capital Candy"), 314 ("is working at Bob's"), 321 ("is working full time at Bob's store").)  She also was able to drive a car, shop in stores, handle her finances, get up early in the morning and drive her boyfriend to work, regularly visit a friend, and work on puzzle books for fifteen minutes at a time.  (AR 217, 220, 221, 353, 583.)  As mentioned above, Schraut told Dr. Korgeski that, although her relationships with coworkers were limited, she was nonetheless able to do her jobs properly.  (AR 352.)  She further stated that, other than stealing from multiple employers, "she did not have particular difficulties on her jobs."

15

(AR 353.)  A former employer agreed, reporting that Schraut generally could do all job functions—including for example learning job duties, working with coworkers, and adapting to work changes—without problems.  (AR 243–44.)  In contrast, Nurse Greenleaf described an individual who was severely limited in her ability to understand and respond appropriately to instructions, and had marked limitations in interacting with the public and coworkers.  (AR 599, 600.)

Also noteworthy, only a few months after Nurse Greenleaf opined that Schraut was markedly limited in her mental functioning, Schraut told mental health counselor Corina Rose that she was unable to work due to her physical symptoms, not her mental problems.  (AR 627; *see also* AR 591.)  Likewise, at the administrative hearing, Schraut testified that her physical impairments were more limiting than her mental problems.  (AR 51–52.)

In sum, the Court finds that the ALJ provided good reasons to afford limited weight to Nurse Greenleaf's opinion, and this decision is supported by substantial evidence.

### B.    Agency Psychologist Opinions

Conversely, the Court finds that the ALJ provided good reasons to afford substantial weight to the opinions of consulting agency psychologists Drs. Atkins and Farrell, and that decision is supported by substantial evidence, as discussed below.

In January 2010, after reviewing the evidence, agency psychologist Dr. Atkins opined that Schraut retained the mental capacity to: understand and remember one-to-three-step instructions; sustain concentration, persistence, and pace for two-hour periods;

16

collaborate with supervisors, cooperate with coworkers, and maintain basic social interactions; and set goals, travel, avoid hazards, and adapt to changes at work.  (AR 366.)  In June 2010, after conducting an independent review of Schraut's records, Dr. Farrell affirmed Dr. Atkins's findings.  (AR 458.)  Considering that Drs. Atkins and Farrell had special expertise in assessing mental impairments, and finding that their opinions were consistent with the evidence as a whole, the ALJ gave "substantial weight" to these opinions.  (AR 29.)

Schraut claims these opinions were deficient because they were made without consideration of certain relevant evidence.  First, Schraut claims Drs. Atkins and Farrell rendered their opinions "without the benefit of NP Greenleaf's treatment records [and] opinion evidence."  (Doc. 10 at 20.)  But in fact, treatment records from Nurse Greenleaf date back to October 2009 (AR 347–39), almost three months before Dr. Atkins rendered her opinion in January 2010 (AR 366) and over eight months before Dr. Farrell rendered his opinion in June 2010 (AR 458).  And Drs. Atkins and Farrell explicitly considered Nurse Greenleaf's October and November 2009 treatment records in their reports, stating that Schraut "was seen for psychiatric eval[uation] and medication in 10/09 and 11/09," and "was diagnosed with psychotic episode because she reported hearing sounds and seeing shadows, but these events lessened and were not considered bothersome by her appointment on 11/3/2009."  (AR 366, 458; *see also* AR 345–49.)  Moreover, Schraut fails to explain how Nurse Greenleaf's treatment notes and opinion would have affected the opinions of Drs. Atkins and Farrell.  Given that Nurse Greenleaf's opinion is inconsistent with the record, as discussed above, the argument fails.

Next, Schraut asserts that Drs. Atkins and Farrell rendered their opinions without considering a report prepared by psychologist Dr. Joann Joy.  (Doc. 10 at 20.)  In this report, Dr. Joy diagnosed Schraut with major depressive disorder, severe social phobia, and pain disorder.  (AR 544.)  Dr. Joy noted that Schraut "experienc[ed] a significant level of psychological distress related to depression in the severe range[,] and anxiety." (*Id.*)  Despite these findings, Dr. Joy did not identify any specific mental limitations. Moreover, Dr. Joy, a psychologist, connected her opinion that Schraut was "relatively limited" in her level of functioning principally to Schraut's physical pain and not to her mental problems.  (*Id.*)  Dr. Joy stated: "Due to her current pain issues, [Schraut] has been unable to work and . . . has difficulty with household chores."  (*Id.*)  She also stated: "Schraut's level of functioning appears to be relatively limited at this point and her pain appears to have significantly changed her lifestyle."  (*Id.*)  Thus, Dr. Joy's report is not inconsistent with Dr. Atkins's and Dr. Farrell's opinions regarding Schraut's mental limitations.

Finally, Schraut claims that Drs. Atkins and Farrell made their opinions "prior to [Schraut] initiating counseling with Ms. Rose."  (Doc. 10 at 19–20.)  Although this is true with respect to Dr. Atkins's opinion, the record reveals that Schraut began her mental health treatment with Rose over two months before Dr. Farrell rendered his opinion.  (AR 458, 591–93.)  More importantly, despite Rose's diagnosis of major depression (AR 593), like Dr. Joy, Rose did not identify any specific mental limitations.  In fact, Rose seems to ascribe Schraut's psychosocial problems largely to financial pressures.  (AR 591.) Furthermore, and also like Dr. Joy, Rose stated that Schraut's physical limitations,

including her back and leg pain, were more significant than her mental limitations.  (*See, e.g.*, AR 591, 627.)

Accordingly, even accepting that Drs. Atkins and Farrell rendered their opinions before certain medical evidence existed, Schraut fails to demonstrate that this evidence—including the treatment notes and opinions of Nurse Greenleaf, Dr. Joy, and counselor Rose—would have altered their opinions.

## III.    ALJ's Consideration of Schraut's Obesity

Next, Schraut argues that the ALJ should have considered and evaluated her morbid obesity at step three (the Listings) and in assessing her RFC, as required by Social Security Ruling (SSR) 02-1p.  (Doc. 10 at 23–24.)  SSR 02-1p provides that, although obesity is not a listed impairment, it is considered a "severe" impairment when, alone or in combination with another impairment, it significantly limits a claimant's physical or mental ability to do basic work activities.  2000 WL 628049, at *4 (Sept. 12, 2002).  The Ruling states: "The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . .  As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."  *Id.* at *6, 7.  The Sixth Circuit observed that SSR 02-1p does not mandate a particular mode of analysis in obesity cases: "It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."  *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006).  And the Third Circuit explained that the standard for evaluating a claimant's obesity under SSR 02-1p is simple: "[A]n ALJ must meaningfully consider the

effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

Here, the ALJ determined that Schraut's morbid obesity was a severe impairment (AR 22), and stated at least twice in his decision that Schraut's back impairment was "compounded by her morbid obesity" (*id.*; AR 27).  The ALJ also noted a treating nurse practitioner's opinion that Schraut's back pain was "likely related to obesity."  (AR 27 (citing AR 555).)  Furthermore, in determining Schraut's RFC, the ALJ relied on the opinion of agency consultant Dr. Geoffrey Knisely (AR 29), and Dr. Knisely explicitly considered Schraut's obesity in his Physical RFC Assessment, stating that Schraut "is obese, 63 [inches] and 240 pounds" (AR 475).  *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (ALJ's evaluation of claimant's obesity proper where ALJ discussed obesity throughout decision; and in determining claimant's RFC, relied on opinions of physicians who accounted for claimant's obesity); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (although ALJ did not explicitly consider claimant's obesity, evaluation proper because ALJ adopted limitations suggested by specialists and reviewing doctors who were aware of claimant's obesity).  Schraut fails to state any particular limitation(s) on her ability to work that allegedly was caused either by her obesity alone or the combination of her obesity and other impairments.  Accordingly, the Court finds no error in the ALJ's consideration of Schraut's obesity.

## IV.   ALJ's Credibility Determination

Lastly, Schraut asserts that the ALJ's credibility determination is not supported by the record.  (Doc. 10 at 24.)  It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant."  *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quotation marks omitted).  If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.  *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)).  "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Here, the ALJ gave several specific reasons in support of his determination that Schraut's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not fully credible."  (AR 26.)  First, the ALJ accurately stated that, despite Schraut's alleged disability onset date of October 25, 2008, she was able to work until May 2009, and her employment ended at that time not due to her mental or physical impairments but rather due to her theft of money from her employer.  (AR 26, 47–51, 360.)  The ALJ also accurately noted that, after Schraut's job ended in May 2009, she was able to complete ten days on a work crew followed by community service work.  (AR 26.)  It was proper for the ALJ to consider this evidence in determining Schraut's credibility, even if the work/community service was only part time.  *See* 20 C.F.R. § 404.1571; *Berger*, 516 F.3d at 546.  The ALJ also accurately stated that, in addition to

Schraut losing her job in May 2009 due to theft, she "had previously had some issues with stealing when working."  (AR 27.)  In fact, Schraut told consulting psychologist Dr. Korgeski that she stole money from at least two of her former employers.  (AR 360, 362.) It was permissible for the ALJ to consider Schraut's past criminal activity in determining her credibility, particularly where that activity involved stealing from her employer, an inherently dishonest act.  *See Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008).  Along the same lines, it was proper for the ALJ to consider Schraut's statement to Nurse Greenleaf that she had been "lying to people" since she was a child, and had recently lied to her therapist.  (AR 28 (citing AR 585).)

In determining Schraut's credibility, the ALJ also correctly considered the objective and subjective medical evidence, as well as statements by Schraut's medical providers which suggested symptom magnification.  (AR 27–29.)  For example, the ALJ noted that treating physician's assistant Robert Hemond stated as follows in a progress note: although Schraut "is convinced that she is disabled because of the level of pain she experiences[,] . . . from a spine perspective she is not disabled and can participate in daily activities without limitation."  (AR 485.)  In another progress note, Hemond stated that Schraut exhibited five out of five Waddell signs on her physical examination, "reflecting psychosocial overlay in her pain."  (AR 668; *see also* AR 616 ("back and right[-]leg pain not concordant with . . . symptoms").  Similarly, treating physician Dr. Thomas Zweber stated in a progress note that he "d[id] not see an obvious etiology" for Schraut's back and leg pain, and surmised that "there may be a secondary gain issue that is involved in her subjective presentation."  (AR 483.)  Likewise, treating nurse practitioner Kathleen

Jackman stated in a progress note that Schraut had a negative workup with the spine center, and that Schraut's pain was "likely related to obesity, deconditioning[,] and lack of stretching."  (AR 555.)  Physical therapist Traci Glanz stated in an Initial Evaluation Note that, although Schraut reported significant limitations in range of motion and moderate limitations in strength of the lower extremities and trunk, these symptoms were not consistent with imaging reports.  (AR 536.)  As discussed earlier, Glanz also noted that, although Schraut ambulated with a cane, she did not put any weight on it.  (*Id.*; *see also* AR 711 ("continues to use a cane however does not bear any weight on [it] or complain about back or problems with walking").)

The ALJ also correctly considered Schraut's conservative treatment regimen and noncompliance with treatment recommendations, as discussed above, in support of his credibility determination.  *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").

Finally, the ALJ found that Schraut's activity level did not support her allegations regarding the severity of her pain and other limitations.  Specifically, the record demonstrates that, during the alleged disability period, Schraut was able to work on up to a full-time basis, search for employment, participate in a vocational rehabilitation program, drive a car, shop in stores, perform all personal care activities, prepare simple meals, do some light chores, handle her finances, get up early in the morning and drive

her boyfriend to work, regularly visit a friend, maintain a romantic relationship, play with her children and her friend's children for short periods of time, care for a cat, and work on puzzle books for fifteen minutes at a time.  (AR 217–21, 235–39, 353, 451, 583.)  It was proper for the ALJ to consider Schraut's ability to do these activities in assessing the credibility of her statements regarding the intensity, persistence, and limiting effects of her symptoms.  *See Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)) ("in assessing the credibility of a claimant's statements, an ALJ must consider . . . the claimant's daily activities").

## Conclusion

For these reasons, the Court DENIES Schraut's motion (Doc. 10), GRANTS the Commissioner's motion (Doc. 14), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 1st day of November, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge